FILED
United States Court of Appeals
Tenth Circuit

May 7, 2014

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

TERA M. BRUNER-MCMAHON;
KATHLEEN A. GULLEDGE,
as Co-Administrators of the Estate of
Terry Albert Bruner, deceased,

  Plaintiffs-Appellants,

v.

MARQUE JAMESON; MARY
STATON; MARK B. COOK; CHARLES
H. FLETCHER; RACHEL M. GAINES;
BOBBY L. HINES; TIMOTHY
MCMAHON; FAUSTINO MARTINEZ;
MICHAEL MURPHY; LISA M. PEREZ;
GERALD PEWEWARDY; LISA R.
PRICE; DANIEL M. SAFARIK; ABDUL
S. SMITH; LISA WILLIAMS,

  Defendants-Appellees.

and

COUNTY OF SEDGWICK, a political
subdivision of the State of Kansas;
ROBERT HINSHAW, Sedgwick County
Sheriff; GARY STEED, Sedgwick
County Sheriff; SEDGWICK COUNTY
SHERIFF'S DEPARTMENT;
SEDGWICK COUNTY BOARD OF
COMMISSIONERS; LISA L.
ARMSTRONG; WAYNE E. BROWN;
CONMED, INC.; CONMED
HEALTHCARE MANAGEMENT, INC.;
RHONDA M. FREEMAN; TED
GIBSON; ERIC HUNT; JOSEPH R.
HUNTER; ERICA JOHNSON-
WOOTSON; JANIS JONES; GLENN

No. 13-3035
(D.C. No. 6:10-CV-01064-KHV)
(D. Kan.)

KURTZ; CASSIE LEU; KEITH J.
LOVINGIER; ALICIA M. MEFFORD;
JARED O. SCHECTER; ANDREA L.
SKELTON; ROBERT D. TAYLOR;
HENRY A. TONG; FNU TOLAN;
KENDRA MAECHTLEN WOLFF;
VICKYE D. BEASLEY; SHARON
NELSON; JOYCE BEYRLE,

Defendants.

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **McKAY**, and **BACHARACH**, Circuit Judges.

Appellants filed this civil rights suit under 42 U.S.C. § 1983, seeking damages

for defendants' deliberate indifference to the serious medical needs of deceased

Kansas inmate Terry Bruner, in violation of his Eighth Amendment rights.[1]

Numerous defendants were named, and appellants' claims against two of the

defendants were tried before a jury, but none of the defendants were held liable.

Appellants challenge the district court's rulings on their claims as to fifteen of the

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]    Appellants initially alleged other claims, but they do not challenge the disposition of any other claims on appeal.

defendants: its January 8, 2013, order denying their motion for new trial as to the two defendants who were tried, and its January 18, 2012, order granting summary judgment to thirteen of the other defendants. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. Background

### A. Summary of the Evidence

The district court thoroughly reviewed the facts, and we need not repeat them in detail here. On November 5, 2007, Mr. Bruner, then forty-six years old, was incarcerated in the Sedgwick County Adult Detention Facility in Wichita ("Sedgwick County Jail"). He signed a form acknowledging that he understood how to receive medical treatment during a medical screening with an employee of ConMed Healthcare Management, Inc. ("ConMed"), the medical provider at the Sedgwick County Jail. He was transferred on November 8, 2007, to the Stanton County Jail in southwestern Kansas. On Tuesday, March 4, 2008, some inmates reported to jail officials that Mr. Bruner was ill. Jail officials checked on Mr. Bruner, who said that he had the flu and did not feel well. It appeared to the officials that he had the flu, but Mr. Bruner said that he was not sick enough to see a doctor and that he did not want to go back to the Sedgwick County Jail.

On Wednesday, March 5, Stanton County Jail officials arranged for Mr. Bruner to be transferred back to the Sedgwick County Jail for a medical appointment with ConMed the next morning. Mr. Bruner was in fact transported

back to the Sedgwick County Jail on Thursday, March 6, but he did not arrive there until after 5:00 p.m., so he missed the appointment that had been made for him and was not seen in the clinic. Mr. Bruner was moved from Sedgwick County Jail's booking area to a cell in POD 1[2] early on the morning of Friday, March 7. Mr. Bruner did not have a cellmate.

ConMed had normal sick call hours only on weekdays at approximately 6:30 a.m., but inmates or jail officers could also make special requests at any time for medical treatment. Neither the deputies nor the sergeants at the Sedgwick County Jail knew that Mr. Bruner had been transferred back there for a medical examination and, from March 6 to March 10, Mr. Bruner never signed up for sick call, made a special request for medical care, or asked any jail employee for medical treatment.

Defendants Lisa M. Perez, Lisa R. Price, Rachel M. Gaines, Timothy McMahon, Bobby L. Hines, and Abdul S. Smith were deputies who worked shifts in POD 1 between 11:00 p.m. on Thursday, March 6, and 7:00 a.m. on Sunday, March 9. They said that they did not remember Mr. Bruner and that they would have noted Mr. Bruner's illness on the computerized daily activity log ("DAL"), if

---

[2]     POD 1 is a protective custody unit. At all times, the POD deputy or a relief deputy remains in the middle of the POD in a booth which has a closed door, glass windows, and a private bathroom. The POD deputy can see the cells and the common day rooms from the booth and can communicate with inmates in their cells through an intercom, but the POD deputy cannot otherwise hear inmates in their cells from the booth. Inmates are free either to stay in their cells or to remain outside of their cells for much of the day in the common day rooms. A deputy conducts rounds a few times during a shift, but only to ensure that inmates are present and alive.

Mr. Bruner had appeared ill or if anyone had reported to them that Mr. Bruner was ill. None of them had recorded on the DAL that Mr. Bruner appeared ill. Defendant Gerald Pewewardy, a sergeant, was in POD 1 for less than half an hour during the first shift on March 8. He did not recall personally observing Mr. Bruner and concluded that he had not received a report that Mr. Bruner was ill.

Defendant Mark B. Cook, a deputy, observed Mr. Bruner during his shift in POD 1 from 7:00 a.m. to 3:00 p.m. on Sunday, March 9, and said that Mr. Bruner was moving slowly and acting strange. Deputy Cook asked Mr. Bruner if he had been eating, and Mr. Bruner responded that he did not feel well, but he never asked to see a doctor or to go to the clinic. Deputy Cook said that he thought that Mr. Bruner was being bullied by other inmates for his food, so he personally gave Mr. Bruner a plate of food at lunch and confirmed that Mr. Bruner ate it. Deputy Cook also said that he saw Mr. Bruner watching television and talking with other inmates in the POD 1 day room that afternoon, and that he told the deputy on the next shift what he had observed and to keep an eye on Mr. Bruner. Defendant Daniel M. Safarik was the POD 1 deputy from 3:00 p.m. to 11:00 p.m. on March 9, and defendant Lisa Williams worked from 11:00 p.m. on March 9 to 7:00 a.m. on March 10. Both of them said that they did not remember Mr. Bruner and that they would have noted Mr. Bruner's illness on the DAL, if Mr. Bruner had appeared ill or if anyone had reported to them that Mr. Bruner was ill. Neither of them had recorded on the DAL that Mr. Bruner appeared ill.

Defendant Mary Staton, deputy in charge on Monday, March 10, said that Mr. Bruner came out of his cell at around 7:15 a.m. for the linen exchange, but he did not have his linens and acted confused. She asked defendants Michael Murphy and Marque Jameson, who were roving deputies, to assist Mr. Bruner back into his cell. They noted that Mr. Bruner complied, but he was moving slowly and acting strange. He did not appear to them to be in pain or distress; they thought that Mr. Bruner might have a mental health condition and that Deputy Staton would address it. Before 10:25 a.m., an inmate told Deputy Staton that Mr. Bruner had not eaten since he arrived in POD 1, and she noted that it had been four days since he arrived. Deputy Staton told her sergeant, defendant Faustino Martinez, at about 10:25 a.m. that Mr. Bruner might have a mental health issue and that an inmate had reported that Mr. Bruner had not eaten for days. Sergeant Martinez told her to call mental health personnel to check on Mr. Bruner during rounds, and a mental health worker told Deputy Staton that she would check on Mr. Bruner in the afternoon.

Deputy Staton also learned by around noon on Monday, March 10, that Mr. Bruner had not eaten his lunch and was unresponsive. She told Sergeant Martinez that Mr. Bruner had not eaten lunch, but not that he was unresponsive. Sergeant Martinez called a mental health worker and asked for a courtesy check on Mr. Bruner during her rounds in the afternoon. Deputy Staton did not check on Mr. Bruner again until some inmates told her at approximately 2:00 p.m. that Mr. Bruner was lying on the floor of his cell and not moving.

- 6 -

Deputy Staton asked Deputy Jameson to check on Mr. Bruner. Deputy Jameson did so a few minutes later and found Mr. Bruner lying in a fetal position on the floor, struggling to get up, but not appearing to be in pain or distress. Deputy Jameson put Mr. Bruner back on his bunk and told Deputy Staton at approximately 2:20 p.m. that something was wrong with Mr. Bruner.

A mental health evaluator and a registered nurse checked on Mr. Bruner at approximately 3:00 p.m. on Monday, March 10. They thought that he appeared very sick and that it was obvious that he needed immediate medical evaluation, so they phoned for a wheelchair to transport him to the clinic. Mr. Bruner was wheeled out of POD 1 at approximately 3:26 p.m.

When Mr. Bruner arrived at the clinic, a licensed practical nurse evaluated his condition, consulted his medical history, and notified defendant Charles H. Fletcher, a ConMed physician's assistant. Mr. Fletcher ordered lab tests, which were drawn at 4:10 p.m., and directed the nurse to set up an IV. A registered nurse saw Mr. Bruner at 5:20 p.m. and noted his condition. At 5:30 p.m., Mr. Fletcher conducted a physical examination and ordered IV fluids to be administered to Mr. Bruner. At 9:01 p.m., Mr. Fletcher reviewed the lab results, saw that Mr. Bruner's white blood cell count was high, and ordered IV antibiotics to be administered. Mr. Fletcher also ordered that Mr. Bruner be transferred to a local hospital. EMS personnel transported Mr. Bruner at 9:39 p.m. He died in the hospital on Wednesday, March 12, from a herniation of the brainstem resulting from a buildup of fluid in the brain caused by

bacterial meningitis due to untreated liver disease. If antibiotics had been administered about six hours earlier than they were, Mr. Bruner probably would have survived. The early signs of meningitis, however, are general, such as: headache, fatigue, irritability, or signs of the common cold or the flu.

## B. Procedural History

Appellants sued numerous defendants connected with the Stanton County Jail, the Sedgwick County Jail, and ConMed. Some of the claims were dismissed, including all of the claims against the Stanton County Jail defendants. All of the remaining defendants moved for summary judgment. In a fifty-five page order filed on January 18, 2012, the district court granted summary judgment to all of those defendants except Deputies Staton and Jameson. Appellants' claims against Deputies Staton and Jameson were then tried to a jury, which found them not liable. In a twelve-page order filed on January 8, 2013, the district court denied appellants' subsequent motion for new trial under Fed. R. Civ. P. 59(a). Appellants appeal from the district court's January 2012 and January 2013 orders.

## II. Issues on Appeal

Appellants argue that the district court erred: (1) in granting summary judgment to Sedgwick County Jail defendants Cook, Perez, Price, Pewewardy, Gaines, McMahon, Hines, Smith, Safarik, Williams, Murphy, and Martinez because there was a genuine issue as to whether they disregarded a substantial risk of serious harm to Mr. Bruner's health by not obtaining timely medical attention for him; (2) in

granting summary judgment to ConMed defendant Charles H. Fletcher because there was a genuine issue as to whether he was deliberately indifferent to Mr. Bruner's serious medical needs; and (3) in denying their motion for new trial as to Deputies Staton and Jameson because (a) the jury's verdict was against the great weight of the evidence, and (b) appellants were deprived of a fair trial by an unbiased jury because the district court refused to strike juror Jody Haugen for cause after she admitted actual bias during voir dire based on pretrial publicity.

## III.  Discussion

### A.  District Court's Order Granting Summary Judgment to Most of the Defendants

"A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment."  *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)).  The concept of "'[d]eliberate indifference' involves both an objective and a subjective component."  *Id.*  The objective component requires a plaintiff to show the existence of a "'sufficiently serious'" medical need.  *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  Defendants conceded that Mr. Bruner's death satisfied the objective component.  The district court determined, however, that appellants could not satisfy the subjective component, which is met only "if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'"  *Id.* (quoting *Farmer*, 511 U.S. at 837).

To satisfy the subjective component, "'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009) (quoting *Farmer*, 511 U.S. at 837). "The factfinder may conclude that a prison official subjectively knew of the substantial risk of harm by circumstantial evidence or 'from the very fact that the risk was obvious.'" *Id.* (quoting *Farmer*, 511 U.S. at 842). But "an obvious risk cannot conclusively establish an inference that the official subjectively knew of the substantial risk of harm, because 'a prison official may show that the obvious escaped him.'" *Id.* (quoting *Farmer*, 511 U.S. at 843 n.8). In addition, the risk prison officials ignored must be the risk appellants claimed. *See Martinez*, 563 F.3d at 1089-90. In this case, appellants asserted that defendants deliberately disregarded a life-threatening condition—not just cold and flu symptoms or confusion that might have been related to a mental health condition.

The district court held that appellants failed to produce competent evidence creating a triable factual issue on their Eighth Amendment claims against defendants Cook, Perez, Price, Pewewardy, Gaines, McMahon, Hines, Smith, Safarik, Williams, Murphy, Martinez, and Fletcher. Appellants contend that Mr. Bruner's deteriorating physical condition was obvious to other inmates and that defendants must have known that he needed medical attention.

"We review the district court's summary judgment order de novo, and apply the same legal standards as the district court." *Doe v. City of Albuquerque*, 667 F.3d 1111, 1122 (10th Cir. 2012). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "In applying this standard, we view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). But "although our review is de novo, we conduct that review from the perspective of the district court at the time it made its ruling, ordinarily limiting our review to the materials adequately brought to the attention of the district court by the parties." *Id.* at 671.

Appellants argue that the evidence showed that it was obvious that Mr. Bruner was ill, so these defendants must have seen that he was ill and consciously disregarded his need for medical care. Appellants fail to acknowledge, however, that it is not sufficient—for a *constitutional* claim—to show that defendants observed that Mr. Bruner appeared to have the flu or was acting in a strange way that might have been related to a mental health condition. Rather, as the district court properly

- 11 -

observed, appellants were required to produce evidence showing that defendants appreciated that Mr. Bruner "had a risk of a fatal medical condition and chose to disregard" *that* risk. Aplt. App. Vol. I at 92. For example, "[i]n *Sealock*, we concluded that the subjective component was not met where a prison nurse misdiagnosed an inmate's chest pains as the flu, and failed to recognize symptoms suggesting an impending heart attack." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (citing *Sealock*, 218 F.3d at 1208, 1211, 1212 n.7).

The district court thoroughly reviewed the evidence in its order, explaining that appellants failed to produce evidence showing that the seriousness of Mr. Bruner's physical illness was appreciated by any of the defendants at Sedgwick County Jail earlier than the afternoon of Monday, March 10, at which time Mr. Bruner promptly received medical care from Mr. Fletcher. Appellants have not pointed us to any summary judgment evidence showing that defendants Cook, Perez, Price, Pewewardy, Gaines, McMahon, Hines, Smith, Safarik, Williams, Murphy, Martinez, or Fletcher recognized that Mr. Bruner was at risk of a fatal medical condition and consciously disregarded it. Appellants failed to satisfy the high legal standard required to demonstrate that there was a genuine issue of material fact on their Eighth Amendment claims as to these defendants.

B. District Court's Order Denying New Trial of Claims Against Staton and Jameson

After the district court entered judgment on the jury verdict in favor of Deputies Staton and Jameson, appellants filed a motion for a new trial pursuant to

Rule 59(a) on the grounds that the verdict was against the great weight of the evidence and that the jury was biased because juror Jody Haugen had admitted actual bias but was not struck for cause. We find no error.

### 1. Verdict was Against the Weight of the Evidence

"A motion for a new trial on the ground that the verdict of the jury is against the weight of the evidence is normally one of fact and not of law and is addressed to the discretion of the trial court." *Blanke v. Alexander*, 152 F.3d 1224, 1235 (10th Cir. 1998) (internal quotation marks omitted). "In reviewing a district court's ruling on a motion for a new trial, we do not make a determination of the sufficiency or weight of the evidence; rather, our review is limited to whether the district court's refusal to set aside the jury's verdict was a manifest abuse of discretion." *Id.* "In this respect, [the moving parties] bear the heavy burden of demonstrating that the verdict was clearly, decidedly, or overwhelmingly against the weight of the evidence." *Id.* at 1236 (internal quotation marks omitted). "So long as a reasonable basis exists for the jury's verdict, we will not disturb the district judge's ruling." *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1260 (10th Cir. 1988).

No such abuse of discretion has been demonstrated here. The evidence for and against Deputies Staton and Jameson was tried to a jury. The district court thoroughly reviewed the evidence in its order denying appellants' motion. The court noted that Deputies Staton and Jameson "testified that they did not know that Bruner needed immediate medical treatment and that they suspected he had a mental

- 13 -

condition," and that several other defendants who saw Mr. Bruner on Sunday, March 9, and Monday, March 10, also testified that they did not recognize that Mr. Bruner needed immediate medical care. Aplt. App. Vol. I at 129 & n.9. The court explained that "[t]he jury verdict ultimately reflected a credibility judgment as to what Staton and Jameson understood about Bruner's condition on March 10 and the risks associated with his condition," and "[t]he trial certainly revealed significant and tragic shortcomings in training and procedure at the Sedgwick Jail and the ConMed Clinic," but "[t]he Court [could] not grant a new trial simply because it may have reached a different conclusion." *Id.* at 129-30.

We have carefully reviewed appellants' materials in assessing their challenge to the district court's conclusion. "Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *Richardson v. City of Albuquerque*, 857 F.2d 727, 730-31 (10th Cir. 1988) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985); *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949)). We are not convinced that the jury's verdict for Deputies Staton and Jameson was clearly, decidedly, or overwhelmingly against the weight of the evidence. The district court did not abuse its discretion when it accepted the jury's verdict for Deputies Staton and Jameson and denied appellants a new trial.

## 2. Juror's Actual Bias

Appellants also argue that their right to a fair trial was violated because one of the jurors was actually biased. They assert that juror Jody Haugen testified during voir dire that she had been subjected to pretrial publicity and, based on that publicity, she was biased in favor of defendants Staton and Jameson. Appellants moved to strike Ms. Haugen for cause, but the court denied the motion. Appellants had used all of their peremptory strikes and were unable to exercise a peremptory strike against Ms. Haugen. They assert that the district court improperly denied their motion for a new trial because the court's failure to strike Ms. Haugen for cause resulted in a biased jury.

"We review the district court's refusal to strike a juror for cause for an abuse of discretion, keeping in mind that the district court is in the best position to observe the juror and to make a first-hand evaluation of [her] ability to be fair." *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1467 (10th Cir. 1994) (citation omitted) (internal quotation marks omitted). A district court must grant a challenge for cause if a prospective juror shows actual prejudice or bias. *Id.* "Actual bias is a factual finding reviewed for clear error." *Skaggs v. Otis Elevator Co.*, 164 F.3d 511, 516 (10th Cir. 1998). We must review the issue based on "the transcript of *voir dire*, considered as a whole." *Cannon v. Gibson*, 259 F.3d 1253, 1280 (10th Cir. 2001). "Actual bias can be shown by the express admission of the juror." *Skaggs*, 164 F.3d at 516. "To show a juror was biased, a [party] must show that the juror had such a

fixed opinion that he or she could not judge impartially." *Hale v. Gibson*, 227 F.3d 1298, 1319 (10th Cir. 2000). "Thus, a juror is not shown to have been partial simply because he or she had a preconceived notion as to the guilt or innocence of the accused." *Id.* "'It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'" *Id.* at 1320 (quoting *Irvin v. Dowd*, 366 U.S. 717, 722-23 (1961)).

Appellants' presentation of this argument is selective on both the law and the facts. Ms. Haugen did say that she was "somewhat slanted" in favor of the defendants. Aplt. App. Vol. V at 1521:9. Appellants do not quote all of the voir dire in their brief, however, omitting that Ms. Haugen said five times—in response to repeated questioning by the court and counsel for both sides—that she thought that she could set aside her initial impression and decide the case based on the court's instructions and the evidence admitted at trial. *Id.* at 1519:23, 1520:8, 1522:16, 1523:10, 1523:14. She confirmed that she was telling the truth. *Id.* at 1523:23.

The district court observed Ms. Haugen during the voir dire. After appellants moved to strike her for cause, the court stated: "I don't remember her saying she couldn't be fair. In fact, I thought where she ended up was the she definitely could be fair." Aplt. App. Vol. V at 1526:10-13. Appellants fail to acknowledge that Ms. Haugen's repeated statement that she thought that she could set aside her initial impressions and decide the case based on the evidence admitted in court is sufficient to negate a finding of actual bias. *See Hale*, 227 F.3d at 1320. The district court did

- 16 -

not abuse its discretion in denying appellants' motion for a new trial based on Ms. Haugen's alleged bias.

Affirmed.

Entered for the Court


Monroe G. McKay
Circuit Judge